UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUHAMMAD WAJAHAT ALAM, et al., | No. 2:24-cv-01103-DJC-CKD |
| Plaintiffs, | |
| v. | ORDER |
| ANTHONY BLINKEN, et al., | |
| Defendants. | |

Defendants move for dismissal or, in the alternative, summary judgment on Plaintiffs' claims that Defendants have unreasonably delayed adjudication of Plaintiffs' immigrant visa application.  Defendants argue that Plaintiffs' claims are unreviewable because the application was already reviewed and refused by a consular officer under 8 U.S.C. § 1201(g), which was a final adjudication, and judicial review of final consular decisions is precluded under the doctrine of consular nonreviewability.  Defendants also argue that, even if the refusal was not a final decision, it has only been fourteen months since the visa application was refused which does not constitute an unreasonable delay.

The Court finds that there has been no unreasonable delay in adjudicating Plaintiffs' visa application.  Accordingly, the Court will grant Defendants' motion.

## BACKGROUND

Plaintiff Muhammad Wajahat Alam ("M. Alam") is a United States ("U.S.") citizen. (Compl. (ECF No. 1) ¶ 58.) Plaintiff Shakila Wajahat Alam ("S. Alam"), Plaintiff M. Alam's wife, is a Pakistani national currently residing in Pakistan. (*Id.* ¶ 59.)

Under the Immigration and Nationality Act ("INA"), consular officers may issue immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and who are admissible to the U.S. (*Id.* ¶ 26 (citing 8 U.S.C. § 1201; 22 C.F.R. § 42.71).) One of the methods by which foreign nationals may immigrate to the U.S. is via their familial relationship with a U.S. citizen or lawful permanent resident. (*Id.* ¶ 27.) Under the INA, family-sponsored visas may be issued to, inter alia, the spouses of U.S. citizens. (*Id.* (citing 8 U.S.C. § 1153(a)(1)–(4)).)

A family-based immigrant visa application is initiated when a U.S. citizen or legal permanent resident files a Form I-130 with United States Citizenship and Immigration Services ("USCIS"). (*Id.* ¶ 28 (citing 8 U.S.C. § 1154).) USCIS verifies that the petitioner is a U.S. citizen or legal permanent resident and that a qualifying relationship exists between the petitioner and the beneficiary. (*Id.* (citing 8 C.F.R. § 204.1(a)(1)).) Upon a Form I-130 approval, if the beneficiary of the immigrant visa petition is residing outside of the U.S., the petition is then sent to the National Visa Center ("NVC") for pre-processing, and the beneficiary is able to begin the process of formally applying for an immigrant visa by submitting a Form DS-260. (*Id.* ¶ 29.)

After completing the Form DS-260, and submitting fees, forms, and supporting documentation to the NVC for review, the application is then sent to the U.S. Embassy having jurisdiction over the noncitizen's place of residence for an interview. (*Id.* ¶ 30.) After completing a medical examination, and paying applicable fees, the beneficiary is interviewed by a consular officer at the beneficiary's applicable U.S. Embassy or Consulate. (*Id.* ¶ 35.) At the end of a beneficiary's immigrant visa interview at the U.S. Embassy or Consulate, the consular officer informs the applicant whether their visa application is approved or denied. (*Id.* ¶ 37.) The consular officer "must issue the visa

or refuse the visa under INA 212(a) or 221(g) or other applicable law." (*Id.* ¶ 39 (quoting 22 C.F.R. § 42.81(a)).) If the consular officer determines that the visa should be refused, the officer must inform the beneficiary of the provision of law or implementing regulation under which the refusal is based. (*Id.* ¶¶ 44–48.)

Before a visa is issued, consular officers must perform a check of automated lookout systems, which are used to help officers identify visa applicants about whom the U.S. government may have information that indicates a possible basis of visa ineligibility. (Compl., Ex A. (ECF No. 1-1) ¶ 10.) If, during the visa interview, allegedly derogatory information exists about an applicant or someone with a similar name to the applicant, the consular officer will receive a "red-light" response to one of the automated lookout systems. (Compl. ¶ 31.) When a consular officer encounters a "red light," the consular officer will request the applicant complete and return a Form DS-5535, "Supplemental Questions for Visa Applicants." (*Id.*) The consular officer will then use the Form DS-5535 to submit a Security Advisory Opinion ("SAO") request, which are handled by the Office of Screening, Analysis, and Coordination ("SAC"). (*Id.*) In any case in which a SAO is required, a consular officer must wait for a response from the SAC, which will provide a recommendation on whether sufficient information exists to support a security-related ineligibility finding. (Compl., Ex A. ¶ 19.)

On October 7, 2019, Plaintiff M. Alam began the process of bringing his wife Plaintiff S. Alam to the United States by filing a Form I-130. (Compl. ¶ 60.) Plaintiffs' Form I-130 was approved on April 14, 2021, and forwarded to NVC for pre-processing. (*Id.* ¶ 61.) Plaintiffs paid the required immigrant visa processing fees and, on April 28, 2021, timely submitted the Form DS-260 along with supporting documentation to the NVC. (*Id.* ¶ 63.) On June 4, 2021, Plaintiffs were found to be documentarily qualified. (*Id.*) Accordingly, on April 19, 2023, Plaintiff S. Alam was interviewed by a consular officer at the U.S. Embassy in Islamabad, Pakistan. (*Id.* ¶ 64.)

After the interview, the consular officer refused Plaintiffs' application under section 221(g) of the INA, 8 U.S.C. § 1201(g). (*Id.* ¶ 65.) Plaintiff S. Alam was informed

her visa application would require further administrative processing and was asked to complete a Form DS-5535 to conduct additional security screening, as well as submit her passport, resume, and master's research topic and thesis. (*Id.*; Compl., Ex. B (ECF No. 1-2); Defs.' Statement of Undisputed Facts (ECF No. 10-1) ¶¶ 7–8.) Plaintiff S. Alam provided all requested information on April 25, 2023. (Compl. ¶ 66; Compl., Ex. D (ECF No. 1-4).) However, to date, Plaintiff S. Alam's application is still being processed, and her application status is shown as "Refused" on the State Department website. (Compl. ¶¶ 67–68.) Plaintiff S. Alam has not received any substantial updates as to when she will receive another decision on her application. (*Id.* ¶ 69.)

Plaintiff S. Alam gave birth while awaiting a decision on her visa application and is raising the child in Pakistan without the benefit of her husband's support. (*Id.* ¶¶ 68, 72.) Plaintiffs allege they have faced significant emotional distress and psychological harm as a result of their separation. (*Id.* ¶¶ 73, 75.) Plaintiffs also allege they have spent considerable amounts of money on the visa application as well as on travel expenses for Plaintiff M. Alam so that he could support his wife throughout her pregnancy and once the child was born. (*Id.* ¶ 76.)

Plaintiffs brought this action against Defendants Antony J. Blinken in his official capacity as U.S. Secretary of State ("Secretary Blinken"), and Carson Wu[1] in his official capacity as Acting Director of Screening, Analysis and Coordination in the State Department's Bureau of Consular Affairs' Visa Service Office, on April 11, 2024. Plaintiffs allege the State Department and U.S. Embassy in Islamabad have unreasonably delayed adjudication of Plaintiff S. Alam's visa application, and ask the Court to compel adjudication under (1) 5 U.S.C. § 555(b), 5 U.S.C. § 706(1), and 5 U.S.C. § 706(2) of the Administrative Procedures Act ("APA"); (2) the Mandamus Act, 28 U.S.C. § 1361; and (3) the Due Process Clause of the Fifth Amendment, U.S. Const., art. V. (Compl. ¶¶ 81–113.)

////

---

[1] Robert Joachim was substituted for Carson Wu on August 5, 2024. (ECF No. 18.)

4

Defendants filed the pending Motion for Dismissal and Summary Judgment on June 10, 2024, seeking dismissal or judgment in their favor on all of Plaintiffs' claims. (Mot. Dismissal and Summ. J. ("MDSJ") (ECF No. 7).) The Court held a hearing on September 19, 2024, with Curtis Morrison appearing for Plaintiffs, and Elliot Wong appearing for Defendants. The matter was submitted.

**LEGAL STANDARD**

**I.    Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**II.   Summary Judgment under Federal Rule of Civil Procedure 56**

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether there are any

5

factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record which they believe demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then shifts to the opposing party, who must establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there remains a genuine issue for trial" and evidence "significantly probative as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (internal quotation marks omitted). If the evidence presented by the nonmoving party is "merely colorable, . . . or is not sufficiently probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

## DISCUSSION

### I.  Plaintiffs' APA Claim

Plaintiffs allege that Defendants have unreasonably delayed final adjudication of Plaintiff S. Alam's immigrant visa application in violation of APA § 555(b) and argue that the Court should compel a timely adjudication under APA §§ 706(1) and 706(2). (Compl. ¶¶ 81–102.) Section 706(1) allows the Court to "compel agency action unlawfully withheld or unreasonably delayed," while section 706(2) allows the Court to "hold unlawful and set aside agency action, findings, and conclusions." 5 U.S.C. §§ 706(1)–(2). Because "[a] challenge to an agency's alleged failure to act is more appropriately channeled through Section 706(1)," the Court will evaluate Plaintiffs'

6

claims under APA § 706(1). *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1309 (S.D. Cal. 2018) (citations omitted). To succeed on an APA unreasonable delay claim, Plaintiffs must show that: (1) the agency has a nondiscretionary duty to act; and (2) the agency has unreasonably delayed acting on that duty. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–64 (2004).

Defendants argue that Plaintiffs' claims are barred under the doctrine of consular nonreviewability because the refusal of Plaintiff S. Alam's visa application was a final decision, and the State Department does not owe Plaintiff S. Alam a nondiscretionary duty to reconsider, within a specified timeframe, whether the refusal of her visa application can be overcome. (MDSJ at 6–11.) Defendants also argue that, because a consular officer only refused Plaintiff S. Alam's visa application about 12 months before Plaintiffs filed this action, the State Department has not unreasonably delayed considering whether that refusal may be overcome. (*Id.* at 12–22.)

### A. Defendants have a Non-Discretionary Duty to Adjudicate Plaintiff's Visa Application

Section 706(1) "grants judicial review if a federal agency has a 'ministerial or non-discretionary' duty amounting to a 'specific, unequivocal command.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016). Plaintiffs allege that, under the INA, immigrant visa applications "shall be reviewed and adjudicated by a consular officer," which creates a "discrete, legally required action." (Compl. ¶¶ 88–89 (quoting 8 U.S.C. § 1202(b)).) "Courts are split on whether there is a mandatory duty to review and adjudicate immigrant visa applications under § 1202(b)." *Iqbal v. Blinken*, No. 2:23-CV-01299-KJM-KJN, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023). However, many courts have found that the use of the word "shall" in section 1202(b) indicates a nondiscretionary duty to act. *See id.* (joining with the district courts holding there is a clear duty).

The Court joins with other district courts in finding section 1202(b) imposes a clear duty on Defendants to adjudicate Plaintiff S. Alam's immigrant visa application.

**B.    Plaintiffs' Claim is Not Barred by Consular Nonreviewability**

Plaintiffs allege that Plaintiff S. Alam's visa application has not yet received a final adjudication because, although it was refused on April 19, 2023, she was given the opportunity to overcome this refusal by submitting further documentation and her application remains in administrative processing. (Compl. ¶¶ 65–80.) Defendants, on the other hand, characterize the consular officer's refusal of the visa application as a final decision. Defendants argue Plaintiff S. Alam's application was formally denied under section 221(g) of the INA, 8 U.S.C. § 1201(g), and that the Ninth Circuit has found that a refusal citing section 221(g) is a final decision which renders the noncitizen "unable to avoid application of the doctrine of consular nonreviewability." *Bechirian v. Blinken*, No. 20-55913, 2022 WL 260052, at *1 (9th Cir. Jan. 27, 2022).

The Court finds that the doctrine of consular nonreviewability is not applicable here. That doctrine enshrines a "longstanding jurisprudential principle that, ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Munoz v. U.S. Dep't of State*, 50 F.4th 906, 909 (9th Cir. 2022) (cleaned up). For the doctrine to apply, a denial of a visa application must have occurred. *See, e.g., Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review." (citations omitted)). The doctrine does not apply where a plaintiff seeks a final decision on their visa application rather than judicial review of a consular decision. *Id.* ("However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken within the consul's discretion, jurisdiction exists." (citation omitted)); *see also Abbassi v. Gaudiosi*, No. 1:23-CV-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May 6, 2024). Further, the mere fact that the State Department has chosen to characterize an action as a "refusal" does not necessarily make it a final decision; rather, "the focus should be on what is *actually* happening[.]" *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020) (emphasis added).

////

Some courts have found that a refusal under section 221(g) fulfills the consulate's duty to adjudicate a visa application. *See, e.g., Senobarian v. Blinken*, No. 2:23-cv-07208-ODW-MAA, 2024 WL 897566, at *3 (C.D. Cal. Feb. 29, 2024); *OC Modeling, LLC v. Pompeo*, No. 20-cv-1687-PA-MAA, 2020 WL 7263278, at *3 (C.D. Cal. Oct. 7, 2020). However, the prevailing position among district courts is that a refusal for administrative processing is not a final decision and therefore does not discharge the agency's obligation to adjudicate visa applications. *See, e.g., Kiani v. Blinken*, No. CV 23-5069-GW-JCX, 2024 WL 658961, at *5 (C.D. Cal. Jan. 4, 2024); *Shahijani v. Laitinen*, No. 2:23-cv-03967-RGK-MRW, 2023 WL 6889774, at *3 (C.D. Cal. Oct. 6, 2023); *Billoo v. Baran*, No. 2:21-cv-05401-CBM-JPR, 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022); *Gonzalez v. Baran*, No. 2:21-cv-05902-CAS-AS, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11, 2022).

In the present case, after refusing Plaintiff S. Alam's application, the consular officer requested that Plaintiff S. Alam complete and submit a Form DS-5535, which she did. (Compl. ¶¶ 65–66.) Under the State Department's regulations, a consular officer may send a Form DS-5535 to a visa applicant "whenever the officer believes that the information provided in Form DS-230 or Form DS-260 is inadequate to determine the alien's eligibility to receive an immigrant visa." 22 C.F.R. § 42.63(c). This suggests the consular official did not reach a final decision to deny Plaintiff S. Alam's visa application on April 19, 2023, but instead kept it under consideration pending receipt and consideration of the information in her Form DS-5535. Further, Plaintiff S. Alam's application status on the State Department website shows that her case is "Refused," but the website informs those "refused for administrative processing [that their] case will remain refused while undergoing such processing [and they] will receive another adjudication once such processing is complete" and "will be contacted if additional information is needed." (Compl. ¶ 67.) A refusal for administrative processing that indicates another adjudication is forthcoming pending additional document submission and review hardly appears to be a final decision.

For these reasons, many courts have concluded that an unreasonable delay claim may proceed where, as here, the plaintiff seeks to challenge the State Department's failure to take timely action on a visa application following the submission of a Form DS-5535 after the consular interview. *See, e.g., Taherian v. Blinken*, No. SACV 23-01927-CJC, 2024 WL 1652625, at *1, *4 (C.D. Cal. 2024) (rejecting claim of consular nonreviewability where "[e]ach Beneficiary Plaintiff participated in a consular interview, had their visa refused under 8 U.S.C. § 1201(g), and was then asked to submit supplemental information via a DS-5535 form"); *Sharifi v. Blinken*, No. 1:23-cv-5112-OEM, 2024 WL 1798185, at *1, *3 (E.D.N.Y. 2024) (rejecting claim of consular nonreviewability where the consulate emailed a Form DS-5535 to the applicant following her interview at the consulate, because "though nominally 'refused,' Mahin's visa application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination"); *Sawahreh v. U.S. Dep't of State*, 630 F. Supp. 3d 155, 158, 160 (D.D.C. 2022) (concluding, where the plaintiff's application status was listed as refused but the plaintiff was also told following his consular interview that he would need to complete and return a Form DS-5535 as part of his visa-application process, that the visa application had not been finally refused and the doctrine of consular non-reviewability was inapplicable).

Even outside the context of cases involving the issuance of a Form DS-5535 following the consular interview, the Ninth Circuit and other courts have determined that a consular officer's refusal to issue a visa at the time of the consular interview does not necessarily qualify as a final denial. *See, e.g., Patel*, 134 F.3d at 931–32 (rejecting claim of consular nonreviewability, even though a consular officer wrote a letter stating that the plaintiff's visa "application is refused," because the consulate was functionally "holding the visa applications in abeyance" pending the receipt of additional information and thus "the consulate's letter is not a refusal within the meaning of 22 C.F.R. § 42.81").

Finally, the Court finds Defendants' citation to *Bechirian* inapposite, as the consular officer's decision in *Bechirian* was based on the merits of the plaintiff's visa application, whereas Plaintiff S. Alam's visa application was refused for administrative processing. *See* 2022 WL 260052, at *1 ("Even if citation to § 1201(g) standing alone was insufficient, the consular officer also determined [the applicant] 'failed to provide proof of a credible relationship' with [the sponsoring fiancé].")

Thus, absent binding Ninth Circuit precedent addressing the applicability (or non-applicability) of the doctrine of consular non-reviewability under the circumstances present here, the Court agrees with the "prevailing position among most other district courts" that the doctrine does not bar review of a visa application in administrative processing. *See Abbassi*, 2024 WL 1995246, at *4.

**C.     The Delay in Reviewing Plaintiff's Visa Application is Reasonable**

"When there is no set deadline by which an agency must act, a court evaluates whether the agency's delay is unreasonable by applying the six factors established by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC* ["*TRAC*"] and adopted by the Ninth Circuit in *Independence Mining Co. v. Babbitt*[.]" *Alaska Indus. Dev. & Exp. Auth. V. Biden*, 685 F. Supp. 3d 813, 857 (D. Alaska 2023) (citing 750 F.2d 70 (D.C. Cir. 1984); 105 F.3d 502, 507 (9th Cir. 1997)). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

////

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (quoting *TRAC*, 750 F.2d at 79–80).

Plaintiffs argue that the Court should abstain from analyzing the *TRAC* factors at this point in the litigation because determining whether any delay is reasonable is a fact-intensive inquiry, and there is insufficient information on which to base a determination at this time. (Opp'n MDSJ (ECF No. 10) at 17–19.) Plaintiff has not, however, identified with any specificity what additional facts require further development. *See* Fed. R. Civ. Proc. 56(d) (court may deny a motion if the nonmovant shows that they require discovery to justify their opposition). Plaintiff also has not "proffer[ed] sufficient facts to show that [some] evidence sought exists, and that it would prevent summary judgment." *Kapoor v. Blinken*, No. 21-cv-01961-BLF, 2022 WL 181217, at *5 (N.D. Cal. Jan. 20, 2022) (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). District courts in this circuit routinely decide immigration actions on summary judgment without discovery. *See, e.g., Ahmed v. United States Dep't of State*, No. 23-CV-02474-SVK, 2024 WL 315705, at *6 (N.D. Cal. Jan. 26, 2024) (denying discovery to develop factual record as to reasonableness of two-year agency delay); *Ali v. Ordeman*, No. 2:23-cv-02822-CKD, 2024 WL 2274912, at *12–18 (E.D. Cal. May 17, 2024) (ruling on reasonableness of 14 month agency delay at dismissal stage). *But see Iqbal*, 2023 WL 7418353, at *8 (declining to apply *TRAC* factors at dismissal stage). As Plaintiffs have not demonstrated discovery is necessary or warranted in this case, the Court will rule on Defendants' Motion.

### 1. First *TRAC* Factor: Rule of Reason

When considering the *TRAC* factors, the Ninth Circuit has held that "[t]he most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). The gist of the rule of reason inquiry is "whether there is any rhyme or reason for the Government's delay – in other words, whether the agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21-CV-01960-TSH, 2021 WL 5331446,

at *4 (N.D. Cal. Nov. 16, 2021) (quotation marks and citation omitted).  When the alleged delay involves the processing of an immigrant visa application, district courts have examined both the length of the delay and the reasons for the delay.  *See id*. at *4–7 (collecting cases).  In the context of alleged delay involving visa application processing, "[t]he delay is measured from the time that Plaintiffs attended their interview, not the time that they first petitioned USCIS."  *Ferdowski v. Blinken*, No. 8:23-cv-01123-JWH-KES, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024).

Plaintiff S. Alam was interviewed by a consular officer on April 19, 2023, and her visa application was refused for further administrative processing that same day. (Compl. ¶¶ 64–65.)  Thus, to date, her application has been pending for over 18 months.  This delay, however, falls far short of what has previously been considered unreasonable in the immigration context.  "Generally, courts have found 'immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable.'"  *Ortiz v. United States Dep't of State*, No. 1:22-cv-00508-AKB, 2023 WL 4407569, at *8 (D. Idaho July 7, 2023) (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022)); *see also Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (concluding 29-month delay not unreasonable); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (concluding "a delay of [two years] does not typically require judicial intervention"); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) (collecting cases and noting courts in that district "have generally found delays of four years or less not to be unreasonable").

The Court notes that there is a dearth of circuit law addressing what constitutes unreasonable delay in the immigration context, particularly in the family-based immigrant visa context.  In addition, many district court cases which have found delays of less than four years reasonable involve visa petitions where plaintiffs were in the United States and not facing family separation, which is clearly distinguishable from the context here.  For example, in *Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345 (E.D. Cal. 2020), the court surveyed unreasonable delay cases and concluded it was "not

13

entirely convinced that the four-year guidepost suggested by these cases involving I-485 petitions or I-526 investor visas (where plaintiffs were likely in the United States and not facing family separation) is a direct comparison to what is happening in this case, in which Plaintiffs have been waiting an average of 563 days for waiver adjudications, whose families are enduring separation, and whose relatives are living under the escalating threat of war." *Id*. 1359–61.  Similarly, this Court is not convinced that Plaintiffs here must wait as long as five years to bring an unreasonable delay claim.  However, this Court has not found, nor have Plaintiffs pointed to, *any* case in the immigration context where a delay of only 18 months has been deemed unreasonable.  Thus, the Court cannot find that the length of delay alone is unreasonable at this point.

Further, there is an identifiable rationale behind the delay: after Plaintiff S. Alam's interview, her application was placed into administrative processing to allow the State Department to gather additional information and obtain a SAO.  (Compl. ¶¶ 31, 65.)  Decisions regarding the admission of foreign nationals "frequently implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances.'" *Didban v. Pompeo*, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) (citation omitted).  In this context, a delay to complete further security screening comports with the "rule of reason."  *See Davila v. Cohan*, No. 23-CV-1532 JLS (BLM), 2024 WL 711618, at *6–7 (S.D. Cal. Feb. 21, 2024).

Accordingly, the first *TRAC* factor weighs in Defendants' favor.

### 2. Second *TRAC* Factor: Congressional Timetable

"[W]here Congress has provided a timetable or other indication of the speed which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the] rule of reason" analysis.  *TRAC*, 750 F.2d at 80.  Plaintiffs point to 9 FAM § 504.7-2(b), which provides the State Department "expects" all consular officers "to strive to meet the 30[ ] day requirement[ ]" of the policy set forth in Section 237 of Public Law 106-113.  (Compl. ¶ 93.)  Section 237(a) states "[i]t shall

14

be the policy of the Department of State to process immigrant visa applications of immediate relatives of United States . . . within 30 days of the receipt of all necessary documents from the applicant and the Immigration and Naturalization Service." Consolidated Appropriations Act of 2000, Pub. L. No. 106-113, § 237, 113 Stat. 1501 (1999).  However, rather than being a mandatory timetable imposed by Congress, the 30-day timeline is a non-binding policy the State Department strives to meet.  *See, e.g., Kapoor*, 2022 WL 181217, at *7; *Pourshakouri v. Pompeo*, No. 20-00402, 2021 WL 3552199, at *9 n.11 (D.D.C. Aug. 11, 2021) (finding 9 FAM § 504.7-2 "insufficient to displace the significant discretion that Congress provided to the federal agencies tasked with processing immigration applicants and vetting them to protect the national security").

Although there is no mandated timeline, the court notes "a non-binding deadline may still be an *indication* of the speed with which Congress expects the agency to proceed."  *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 94 (D.D.C. 2022) (emphasis in original) (internal marks and citations omitted).  Thus, while the 30-day timeline may be aspirational, a substantial delay in excess of this goal runs counter to Congressional expectations.  *Cf., e.g., Keller Wurtz v. U. S. Citizenship & Immigr. Servs.*, No. 20-2163, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) ("USCIS is correct that this timeline is not mandatory, but it nevertheless weighs in favor of finding the delay here—approximately four times Congress's stated goal—to be unreasonable.").

However, because Congress has not yet imposed a mandatory timeline and the delay otherwise comports with the rule of reason, the second *TRAC* factor is neutral based on this record.  *See Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *5 (N.D. Cal. June 16, 2021) (second *TRAC* factor was neutral where Congress did not mandate a timeline); *see also Poursohi*, 2021 WL 5331446, at *9 ("[G]iven the absence of a mandatory timetable for adjudication of Plaintiffs' Application combined with the fact that the delay comports with the rule of reason, the second *TRAC* factor also weighs in Defendant's favor or is at least neutral.").

### 3. Third and Fifth *TRAC* Factors: Nature of Interests

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay." *Poursohi*, 2021 WL 5331446, at *9. Plaintiffs allege that the prolonged and indefinite duration of their separation has caused them extreme emotional, psychological, and financial harm. (Opp'n MDSJ at 23–24.)

The Court acknowledges the severe effect on an individual's health and welfare separation from family can cause. *See, e.g., R. v. U.S. Citizenship & Immigr. Servs.*, No. 2:23-cv-05460 DDP-ASx, 2023 WL 9197564, at *4 (C.D. Cal. Dec. 6, 2023) (concluding the third and fifth TRAC factors favored the plaintiff in light of "the significant harm and emotional distress that family separation causes"); *Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397-ABJ, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (weighing third and fifth TRAC factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife).

Thus, the Court concludes the third and fifth *TRAC* factors favor Plaintiffs.

### 4. Fourth *TRAC* Factor: Effect of Expediting Delayed Action

Under the fourth *TRAC* factor, the court considers the effect of expediting the adjudication of the plaintiff's applications on other agency action of a higher or competing priority. *Kapoor*, No. 2022 WL 181217, at *8. "Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain." *Jain*, 2021 WL 2458356, at *6.

Plaintiffs ask the Court to order that Defendants process Plaintiff S. Alam's visa application within 30 days. (*See* Compl. at 24.) However, "Plaintiffs make no showing that would justify moving them to the head of the queue, or why their petitions should be processed immediately while other similarly-situated petitioners wait their turn." *Jain*, 2021 WL 2458356, at *6. The effect of expediting Plaintiffs' application undoubtedly favors the Defendants, as expediting Plaintiff S. Alam's application would

16

result in no net gain in the backlog while disadvantaging visa applicants of higher priority or of the same priority but whose applications have been pending longer. *Poursohi*, 2021 WL 5331446, at *11; *see also Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *5 (W.D. Wash. Apr. 5, 2023) (noting many families face delays and ordering the State Department to schedule the beneficiary plaintiff's interview would not ameliorate the situation).

Plaintiffs contend that administrative processing requests are not resolved on a first-in, first-out basis, thus there is no "queue" to be disrupted by judicial action. (Opp'n MDSJ at 24–25.)  But even if processing requests are not dealt with strictly in the order received, "granting the relief Plaintiff[s] seek[] would [still] push others, some of whom may not have the resources to commence litigation, further back in the process." *Aghchay v. U.S. Dep't of State*, No. 22-cv-5708-PA-PVC, 2022 WL 19569516, at *3 (C.D. Cal. Dec. 20, 2022).  "[E]xpediting any putative delayed action on Plaintiff's application will affect other agency priorities, while sending other applicants, whom the Government is entitled to prioritize for foreign policy and other reasons, to the back of the line." *Ahmed v. Bitter*, No. 4:22-cv-02474, 2024 WL 1340255, at *5 (S.D. Tex. Mar. 28, 2024).

The fourth *TRAC* factor weighs in favor of Defendants.

### 5. Sixth *TRAC* Factor: Impropriety

The sixth TRAC factor is "not really a 'factor,' but merely a confirmation that agency delay need not be intentional to be unreasonable." *Feng v. Beers*, No. 2:13-CV-02396-JAM, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014).  If a plaintiff does not allege bad faith, courts should either ignore this factor or hold that it slightly favors the government without "excus[ing] unreasonable delay." *Id*.

Plaintiffs contend that the mere existence of the delay—and the absence of efforts by Defendants to either expedite their application or provide a substantial update—constitutes "bad faith." (Opp'n MDSJ at 25.)  However, this factor does not concern the length or nature of the delay, but whether the delay is improper.  The

complaint does not plausibly allege that the delay is intentional or the result of impropriety on the part of Defendants.  *See Sawahreh*, 630 F. Supp. 3d at 164.

The Court finds no lurking impropriety, and therefore concludes that the sixth *TRAC* factor favors neither party.

### 6. Weighing the TRAC Factors

The Court finds that the first and fourth *TRAC* factors weigh against granting Plaintiffs' requested relief, while the third and fifth factors weigh in favor of granting Plaintiffs' request.  However, in evaluating the *TRAC* factors, "courts routinely afford the most weight" to the first and fourth factors.  *Poursohi*, 2021 WL 5331446, at *11.

The Court finds that the overall balance favors Defendants as factor one, which is the most important factor, weighs heavily in their favor.  *In re A Cmty. Voice*, 878 F.3d at 786.  While the Court is sympathetic to Plaintiffs' situation and the hardships that family separation can cause, the weight of caselaw dictates that the 18-month delay in adjudicating Plaintiff S. Alam's visa application is not unreasonable.  Further, Plaintiffs have not demonstrated the existence of any disputed material facts that would preclude summary judgment.

Although the Court can foresee a point at which the delay in ruling on Plaintiffs' visa application would be unreasonable, based on the existing record, that time has not yet come.  Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' APA claim for unreasonable delay.

## II. Plaintiffs' Mandamus Act Claim

The Ninth Circuit has recognized that relief sought under the Mandamus Act and the APA is "essentially the same." *Indep. Mining Co.*, 105 F.3d at 507.  Thus, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the Court] may elect to analyze the APA claim only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022).  "If Plaintiffs' APA claim fails, their claim under the Mandamus Act fails as well." *Infracost Inc. v. Blinken*, ___ F. Supp. 3d. ___, No. 23-CV-2226, 2024 WL 1914368, at *5 (S.D. Cal. Apr. 30, 2024).

Because Plaintiffs seek relief under the APA as well as the Mandamus Act, the Court need not separately analyze Plaintiffs' Mandamus Act claim. *See, e.g., Shahijani*, 2023 WL 6889774, at *2 ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only."). Because the Court will grant summary judgment Plaintiffs' APA claim, the Court will also grant summary judgment on Plaintiffs' Mandamus Act claim.

### III. Plaintiffs' Fifth Amendment Due Process Claim

Plaintiffs contend that Defendants have infringed on Plaintiff M. Alam's "Constitutional Right to Due Process by failing to timely provide a final adjudication of his spouse's visa application" because U.S. citizens possess a liberty interest in their non-citizen spouse's visa application. (Compl. ¶¶ 110-13.) Plaintiffs' Due Process claim, however, is foreclosed by the Supreme Court's recent decision in *Department of State v. Munoz*, 144 S. Ct. 1812 (2024), wherein the Supreme Court held that "a citizen does not have a fundamental liberty interest in [their] noncitizen spouse being admitted to the country." *Id.* at 1821. Consistent with that decision, the Court concludes Plaintiffs have failed to plausibly allege a deprivation of a fundamental liberty interest. The Court accordingly grants summary judgment in Defendants favor on Plaintiffs' Due Process claim.

### CONCLUSION

In accordance with the above, it is hereby ORDERED that Defendants' Motion for Dismissal and Summary Judgment (ECF No. 7) is GRANTED. The Court finds that Defendants are entitled to judgment on all three of Plaintiffs' claims. The Clerk of Court is directed to enter judgment in Defendants' favor.

IT IS SO ORDERED.

Dated:   **November 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE